AMOS LOVERING *versus* CHARLES M. FOGG.

An agreement made upon the sale of land, that the vendee shall not sell it without first offering it to the vendor, does not preclude the vendee from mortgaging the land to a third person, to secure the payment of a debt, without making such offer. Where such vendee gave an absolute deed of the land to a creditor, with notice of such a contract, upon his agreeing, verbally, to execute a bond to reconvey the same on receiving payment of the debt, it was *held*, that the subsequent execution of the bond related back, so that as between the parties themselves the deed and bond constituted a mortgage, and that the original owner, therefore, was not entitled to a decree for a specific performance of the contract to reconvey.

THIS was a bill in equity setting forth, that the complainant, on the 24th of June, 1833, being seised in fee of a lot of land in Medway, of the value of $50, which he was willing to sell and convey, for less than its real value, to the defendant Fogg, as a site for buildings for his own use as a mechanic, conveyed the same to Fogg for the sum of $25 ; that Fogg, at the same time, and in consideration of such conveyance, executed a contract in writing with the complainant, whereby it was agreed, that if Fogg should ever sell the land, the complainant should have the first offer, and should have the land, provided he would give as much therefor as any other person, and not other

wise ; that such agreement was duly recorded in the registry of deeds ; that the complainant had always been ready to pay Fogg as much money for the land as any other person would give therefor, and has often requested Fogg to convey it to him, in case he should convey it to any person ; but that Fogg, on the 16th of March, 1835, without first offering the land to the complainant, sold and conveyed it in fee simple to Cutler Partridge, the other defendant ; that Partridge, at the time when he received such conveyance of the land, knew of the agreement made between Fogg and the complainant, and that Fogg had no right to convey the same to Partridge ; and that as this transaction between the defendants was secret, the com plainant does not know exactly what sum of money was paid or agreed to be paid as the consideration of such sale, but that he believed it to be about the sum of $50 ; that he has frequently called on the defendants to inform him what sum was actually paid or agreed to be paid as the consideration of the sale, and has frequently offered to pay to Partridge such sums of money as he has paid on account of the land, and to perform any agreement which he has made for the payment of any further sums on account thereof, and has also frequently demanded of Partridge to convey the land to him : wherefore, the complainant prays, that the defendants may be compelled to make discovery, &c. and to perform specifically the agreement between the complainant and Fogg.

The answer of the defendant Fogg admits the existence of the agreement between himself and the complainant, but avers, that on the 16th of March, 1835, the land was under attachment in a suit against the respondent for the sum of about $50, exclusive of costs, and that on the same day he was indebted to Partridge in the sum of $300, a part of which was lent him by Partridge to remove the attachment, and that it was agreed between him and Partridge, that he should give to Partridge a mortgage of the land to secure payment of the sum due to Partridge ; that the respondent then gave Partridge an absolute deed of the land, under an engagement then made to him by Partridge, that he would give the respondent a bond to reconvey the same, on his paying that sum with interest ; that Partridge did afterwards, in pursuance of his agreement, execute

such a bond bearing even date with the deed to him, which bond is now in the respondent's hands ; that the respondent, at the time when such deed was given, was informed and believed that the deed and bond constituted a mortgage, agreeably to his intention, and to the agreement originally made between him and Partridge ; that he has since paid to Partridge about one third part of the sum secured by the deed ; that the respondent did not wish or intend to sell the land in any sense which he attached to the promise made by him to the complainant ; that he intended and expected, and still intends and expects, to redeem the land ; and that he intends if he should ever desire or be obliged to sell the land, that the complainant shall have it, provided he will give as much therefor as any other person.

The answer of Partridge admits, that at the time when Fogg conveyed the land to him, Fogg informed him that he had engaged to give the complainant the first offer of the land, but denies that it was ever the intention or wish of the respondent that the land should become his own ; avers, that when he received the deed, he expected, and had no reason to doubt, that Fogg would redeem the land by paying the debt secured thereby ; and denies that the complainant ever requested the respondent to convey the land to him.

The complainant filed a general replication.

*Nov. 4th.* *Leland*, for the plaintiff.

*Metcalf*, for the defendants, denied that the agreement between the plaintiff and Fogg had been broken. The transaction between the defendants was not a sale, but a mortgage. In chancery it is clearly a mortgage, and would probably be so regarded at law. Bac. Abr. *Mortgage, B ; Blaney* v. *Bearce*, 2 Greenleaf, 132. A decree for specific performance in this case, would do manifest injustice to Fogg. It would prevent his redeeming the land, and frustrate the object of his original purchase.

*Feb. term* 1837. SHAW C. J. drew up the opinion of the Court. The plaintiff has filed his bill in equity against the two defendants, to enforce the specific performance of an agreement. The Court are of opinion, that the true nature and purpose of this agreement were to give to the plaintiff, from whose estate the land was taken, and with which it may be presumed to be con

nected, a right of pre-emption, in case of a final alienation, so as to prevent the letting in of a stranger. But this could not be intended to restrain the defendant from all or any of the uses of his property, incident to the ownership, except on an offer to the plaintiff before a sale and alienation. It could not prevent him from mortgaging it to raise money. Had it been passed by a process *in invitum,* as an attachment and levy of execution on an adverse judgment, it is, to say the least, very questionable whether it would have come within the terms of the agreement. If indeed an attachment and levy, or a judgment at law, had been resorted to by mutual consent, as in case of a fine, it might have been deemed a sale and alienation. But the Court are of opinion, that the deed from Fogg to Partridge was, in effect, good as a mortgage between them. When the deed was originally given, absolute in its form, but with an agreement, made in good faith, that a defeasance should be executed, on request, when such defeasance was executed, in good faith, it related back to the deed, and made it a mortgage. Had the estate been attached as Partridge's, in the mean time, it might be attended with difficulties, but they do not now arise. When the absolute deed was first made, there was a sufficient agreement, to constitute a defeasance ; but it was not proved and manifested, in the manner required by law, by inserting it as a condition in the original, or by a separate deed. Where the delay of the defeasance does not affect third persons, the defeasance, when made, is good between the parties. This being a security for money, and not a sale or alienation of the estate, we think the *casus foederis* had not occurred, that the plaintiff had no right to call for a specific performance of the agreement, and that the bill must be dismissed with costs.